UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUIS GONZALEZ RODRIGUEZ, <br><br> Defendant. | Case No. 5:15-cv-04021-EJD <br><br> **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 16 |

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") is an international distributor of sports and entertainment programming and secured the domestic commercial exhibition rights to broadcast and sublicense one particular program, namely "Mayhem: Floyd Mayweather, Jr. v. Marcos Rene Maidana, II WBC World Lightweight Championship Fight Program" (the "Event"), which was telecast nationwide on September 13, 2014. In this action, Plaintiff alleges that Defendant Luis Gonzalez Rodriguez illegally intercepted and broadcasted the Event at his restaurant, Los Jarritos.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises from service on Defendant in California. Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990). Plaintiff filed the Complaint on September 2, 2015. Defendant failed to answer and his default was entered by the Clerk on February 1, 2016. Dkt. No. 15.

Plaintiff's now applies for entry of default judgment. Dkt. No. 16. The court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing scheduled for May 19, 2016, will be vacated. Plaintiff's application will

1

Case No.: 5:15-cv-04021-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

be granted for the reasons explained below.

## II. BACKGROUND

Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. Aff. of Joseph M. Gagliardi ("Gagliardi Aff."), Dkt. No. 16, at ¶ 4. Plaintiff was licensed to exhibit the Event at closed circuit locations located in commercial establishments. Id. at ¶ 5. In order for commercial establishments to broadcast the Event, owners were required to enter into a sublicense agreement with Plaintiff and pay a fee calculated using the capacity of the establishment. Id. at ¶¶ 6, 8. The sublicense provided commercial establishments the ability to publicly exhibit the Event. Id. at ¶ 7.

On September 13, 2014, investigator Jeff Kaplan viewed a broadcast of the Event at Los Jarritos in San Jose, California. Aff. of Jeff Kaplan ("Kaplan Aff."), Dkt. No. 16. Based on Kaplan's observations, Plaintiff alleges that Defendant displayed the Event without obtaining the proper sublicense. Gagliardi Aff., at ¶ 9.

While he was at Los Jarritos, Kaplan observed one large screen in the back of the room displaying prefight interviews, highlights from the first fight between the main event boxers, and the start of the undercard fight. Plaintiff owned the rights to distribute those preliminary events. Gagliardi Decl., at ¶ 3. The establishment's capacity was approximately 75 persons. Three separate headcounts - all of which apparently occurred in one minute or less at 6:04 p.m.[1] - yielded 10 persons each time.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court to

---

[1] In his affidavit, Kaplan states he both entered and left Los Jarritos at 6:04 p.m. on September 13, 2014.

2
Case No.: 5:15-cv-04021-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

determine whether to enter a default judgment, known commonly as the Eitel factors. They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all well-pled factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. DISCUSSION

### A. The Eitel Factors

This court has previously found the Eitel factors weigh in favor of default judgment under nearly identical circumstances. The result is the same in this case.

As to the first factor, denying Plaintiff's application for default judgment would make little sense since Defendant has refused to respond to this action. The court would hear and review the same evidence it has before it now if Plaintiff was required to prove up its case at an uncontested trial. For that reason, Plaintiff would be prejudiced in the form of further delay and expense if the court were to deny the present application. This factor weighs in favor of default judgment.

As to the second and third factors, Plaintiff's substantive claims appear meritorious and the Complaint is sufficiently pled. Plaintiff has alleged that Defendant violated two sections of Title 47 and the alleged activities of Defendants appear to have violated at least one of those sections. Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief. These factors also weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake has yet to be determined but the damages cannot exceed the amounts specified in 47 U.S.C. § 553 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000. See 47 U.S.C. § 553(c)(3)(A)(ii), (B). Plaintiff is seeking $2,000 in damages for conversion, or the

3
Case No.: 5:15-cv-04021-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

1  amount Defendant would have been required to pay for the license.  All things considered, the
2  relatively small sum of damages weighs in favor of default judgment.

3  As to the fifth factor, there is no dispute of material fact.  Indications that there is a dispute
4  of material fact can weigh against entry of default judgment.  See Eitel, 782 F.2d at 1471-72.  But
5  here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond
6  to either the Complaint or this motion, and the material facts pled in the Complaint are supported
7  or explained by affidavit or declaration.

8  For the sixth factor, it is unlikely that default was the result of excusable neglect.  This
9  action was filed approximately 8 months ago and the docket reveals that Defendant was properly
10 noticed of this action through substitute service at the establishment.  In addition, Defendant was
11 served with a copy of the instant motion.  Defendant failed to respond despite these notifications.
12 This factor, therefore, weighs in favor of default judgment.

13 Finally, the seventh factor weighs in favor of default judgment because "although federal
14 policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations
15 such as this where defendants refuse to litigate."  J & J Sports Prods, Inc. v. Concepcion, No. 10-
16 CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011).
17 Thus, the general policy in favor of merits decisions is outweighed by the specific considerations
18 made in this case.  As such, this factor does not prevent entry of default judgment here.

### B. Calculation of Damages

#### i. Statutory Violation

Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47
U.S.C. § 605(e)(3)(B)(iii), which prohibits any person from receiving or transmitting "wire or
radio" signals except through authorized channels.  47 U.S.C. § 605(a).  More specifically, the
statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons
satellite cable programming.'"  J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist.
LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods.,
Inc. v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D.

Cal. Apr. 16, 2009)). The statute provides for statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff also mentions another potential basis for relief - 47 U.S.C. § 553(c)(3)(A)(ii) - but does not directly request damages under that statute. Plaintiff did, however, allege that Defendant violated that statute in the Complaint. Section 553 proscribes "a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'" Ro, 2010 U.S. Dist. LEXIS 21425, at *8 (quoting J & J Sports Prods, Inc., v. Manzano, 2008 U.S. Dist. LEXIS 84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept. 29, 2008)). In essence, § 553 prohibits "both illegally receiving cable programming and helping others to illegally receive cable programming." Manzano, 2008 U.S. Dist. LEXIS 84931, at *5. Statutory damages under Section 553 range from $250 to a maximum of $10,000, "as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

Sections 605 and 553 are not coextensive because each section prohibits a distinct method of interception. Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast." Ro, 2010 U.S. Dist. LEXIS 21425, at *8. "But he cannot violate both by a single act of interception." Id. at *8.

Here, Plaintiff admits that Kaplan was unable to determine the exact means used by Defendant to intercept the Event. In fact, Kaplan makes no comment on the actual means of interception in his affidavit. Under circumstances such as these, this court has found § 553 a more appropriate basis for the calculation of damages. See Joe Hand Promotions, Inc. v. Lorenzana, No. 5:13-cv-05925 EJD, 2014 U.S. Dist. LEXIS 110784, at *8-9, 2014 WL 3965097 (N.D. Cal. Aug. 11, 2014); see also J & J Sports Prods. v. Ocampo, No. 5:15-cv-00982-EJD, 2015 U.S. Dist. LEXIS 126100, at *8 (N.D. Cal. Sept. 20, 2015). This is because a satellite dish, which requires an unobstructed view of the sky, is not easily hidden. A cable box, on the other hand, is easily hidden. On this showing, the court concludes that Defendant must have intercepted the program via a cable signal in violation of § 553 and not § 605.

Consistent with its prior orders on this topic, the court awards Plaintiff $250 in statutory

damages under § 553. This amount is especially appropriate here because Plaintiff did little if anything to develop the record. Since he visited Los Jarritos for one minute or less during the broadcast of the Event, it is understandable why Plaintiff's investigator failed to determine the one critical fact that separates a § 553 violation from a § 605 violation. Only the minimum amount of statutory damages is justified on this record.

As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000 may be warranted if the court finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain." The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts. These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been awarded when the defendant has violated sections 605 or 553 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6, 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

In this case, Plaintiff admits there are "no egregious circumstances" to support a sizeable award of enhanced damages. Defendant did not charge a cover to patrons nor is there any evidence that Defendant increased prices or required food or drink purchases during the Event. The number of patrons in Los Jarritos during Kaplan's minute-long investigation was only 10. Since there is no evidence that Defendant broadcast the program for any particular commercial advantage or private financial gain, Plaintiff is entitled to $2,200 in enhanced damages, which represents the value of the commercial license to air the program.[2] This amount properly accounts for the broadcast's impact on Plaintiff and is sufficient deter future conduct by Defendant and

---

[2] Although Gagliardi states in his affidavit that the cost to purchase a license would have been $2,000 for an establishment with Los Jarritos' capacity, the rate card indicates it actually would have been $2,200. Gagliardi Aff., at Ex. 2.

other similarly-situated establishments.

### C. Conversion

Plaintiff requests damages for the tort of conversion in the amount Defendant would have been required to pay for a license, which as noted is $2,200. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the Event and has properly alleged the misappropriation of the right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $2,200. Accordingly, the court awards Plaintiff $2,200 in damages for conversion.

### V. ORDER

Based on the foregoing, Plaintiff's application for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $4,650.00 in total damages.

The hearing scheduled for May 19, 2016, is VACATED and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: May 16, 2016

_____
EDWARD J. DAVILA
United States District Judge

7
Case No.: 5:15-cv-04021-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT